UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANNETTE YOUNG,

        Plaintiff,

    v.

AFFORDABLE CARE, LLC, A
FOREIGN PROFIT
CORPORATION,

        Defendant.

_____/

Case No. 2:23-cv-1162-KCD-DNF

## ORDER

Plaintiff Annette Young sues her former employer, Affordable Care, LLC, for discrimination. Before the Court are cross-motions for summary judgment. (Docs. 59, 60.) The questions presented are whether Young's claims under the Family and Medical Leave Act, the Americans with Disabilities Act, and the Florida Civil Rights Act should proceed to a jury or be decided here as a matter of law. For the reasons that follow, the FMLA claims survive, while the disability claims do not.

### I. Background

The parties agree on little, so to compile the timeline of events, the Court presents both disputed and undisputed facts.[1] Young worked for Affordable

---

[1] Affordable Care's response to Young's summary judgment motion (Doc. 67) did not follow the Court's procedures outlined in the Case Management and Scheduling Order (Doc. 21). That order requires the opposing party's statement of material facts to mirror the moving

Care for nearly two years. First, she was a Manager of Field Operations, then she moved to the Field Trainer Specialist ("FTS") role. Her supervisor was Deanna Ali, the Senior Director of Training and Development.

FTS employees are expected to travel extensively to assigned dental practices and stay for days at a time to train staff. Ali testified that Young had problems following her assigned travel schedule, with one instance being after Hurricane Ian in October 2022. Ali told Young, "I realize that the impacts of this storm are out of your control but working towards meeting our customers' needs is a priority. The urgency and importance of this service has not been demonstrated by you since you transferred to the training team." (Doc. 60-5.)

Laura Lovell, the Senior Manager of Employee Relations and HR Business Partner, also testified that Young "was underperforming … or had [] issues with following expectations of her management, and her manager [Ali] and I gave her many counseling sessions and communications regarding not following expectations." (*See* Doc. 59-3 at 14.) Young disputes that these counseling sessions occurred. (Doc. 66 ¶ 14; Doc. 66-1 ¶ 7.)

According to Lovell, Young was making unilateral decisions about her travel without consulting her manager and failed to show up for work as

---

party's statement of material facts by admitting and/or denying each of the assertions in matching numbered paragraphs with record citations. Affordable Care did not do that. *See* Doc. 67. Thus, the Court will consider some aspects of Young's timeline as undisputed. (*See* Doc. 21 at 5); *Toliver v. City of Jacksonville*, No. 3:15-cv-1010-J-34JRK, 2017 WL 1196637, at *13 (M.D. Fla. Mar. 31, 2017).

scheduled. (Doc. 66 at 16-17, 36.) Ali testified similarly. (Doc. 59-2.) According to him, "there was constant, constant misunderstanding from [Young]," and "Annette consistently always had a reason why she couldn't attend an assignment." (*Id.* at 44-45.) Young, however, tells a different story. She contends she was never told her performance was an issue. (Doc. 66 ¶¶ 5, 22.)

The alleged "final straw" involved Young's assignment to travel and work at Dr. John Harvey's practice in LaGrange, Georgia. After receiving the assignment on March 30, 2023, Young emailed Ali to ask whether "in general if you could switch me up, so I'm not staying in the same office repetitively" because Young wanted "to get out an explore and do more[.]" Ali denied the request and stated, "Annette, it is difficult for me to rely on you at this point to ensure that you are going to be at your assigned location each week. This uncertainty cannot continue and is not fair to your teammates or the practices that we support. I expect you to be at the LaGrange site on Monday and through the duration of your assignment. If you are not, then I will have no choice but to take further disciplinary action." (Doc. 60-7 at 3.) Young responded that it wasn't a problem. (*Id.* at 2.)

Young worked at the LaGrange dental practice on March 31, 2023. It is undisputed that the practice closed early that day, but the reason for the early closure is heavily disputed. Affordable Care claims that Young closed the practice early to get a head start on her drive home to Florida, which was

3

prohibited without approval. And Ali did not approve of closing the practice early.

Young alleges that Dr. Harvey closed the practice early because his dental assistant was not there and there were no patient appointments, so she had no choice but to close early. Ali alleges that Dr. Harvey was upset that Young left early (Doc. 67-7 at ¶ 4.) But Young presents evidence that Dr. Harvey praised her performance. (Doc. 59-16.) At bottom, there is conflicting evidence as to what might have happened that day.

Affordable Care alleges that Young's "unilateral decision" to close the LaGrange office early resulted in her termination on March 31, 2023. Ali received at least two emails about Young on that day. One was from Garrett Pelton, VP of Field Operations:

> We continue to have commitment challenges from Annette Young. We are in a very difficult situation when we deploy her to a location, and she doesn't show up as expected or she decides to leave early. The doctors have certain expectations and we have made commitments to those doctors that Annette will show up and have an impactful visit during the time she is in their office. Most recently, we had issues in Lagrange, Georgia, not only with her, not showing up when expected, but then also leaving the practice early on Friday. This is not the first time that we have ran into this with Annette. Bobby and I have both found we are making excuses too often for her inadequate performance. I do not want to put you in a difficult situation, but I would like to request that we not send Annette into my region any longer. It is creating a credibility problem between operations and our doctors, and I cannot continue to risk the relationship damage she is causing. Please give me a call if you have any questions. I am so sorry for the negative email, but this is gotten to a point that we can no longer count on Annette to provide quality service to our affiliated doctors.

(Doc. 60-10.) The other was from Bobby Donnell, Director of Field Operations, which reads: "I would like to ask a favor of you, and not have Annette Young back in any of my practices. Including the events from this week, we have consistently had issues with her performance and attendance in practices. The MFO's feel like they must go behind each of her visits to regain the confidence of the PO's in the training team." (Doc. 66-2 at 51.)

The stated reason for Young's termination on Affordable Care's Employee Status Change Form was: "Employee has multiple instances of not showing up for assignments or trying to get out of assignments. She has become unreliable. Today she took it upon herself to close a practice early so she could leave early. This is not her decision to make." (Doc. 60-12.) Still, five days after her termination, Tiama Smith, Lead Field Training Specialist for Affordable Care, sent Young a professional recommendation letter, stating that she witnessed Young's "exceptional skills" and was "confident that Annette's attitude and skills would make her a valuable contributor to any organization." (Doc. 59-4.)

In the days preceding March 31, Young was suffering from medical issues that necessitated her taking time off work. That timeline is largely undisputed. On February 10, Young emailed and texted Ali about a doctor's order to rest her voice for a week. The email reads:

5

**From:** Annette Young <Annette.Young@affordablecare.com>
**Sent:** Friday, February 10, 2023 3:05 PM
**To:** Deena Ali <Deena.Ali@affordablecare.com>
**Subject:** Work next week

Hi Deena
My Doctor has me on full voice rest! My voice box is extremely swollen and has lesions she said she is concerned my vocal cords could be paralyzed or something else is going on. She wants me to rest for a full week no talking. Has me on Z pack and steroids if that doesn't help I have to see a ENT for a procedure.

Annette Young
Field Trainer Specialist
239-292-5299
Annette.Young@affordablecare.com

(Doc. 59-2 at 161.) Young sought medical treatment for the same symptoms and conditions on February 13, 17, and 28. She eventually returned to work on March 2.

Young attended three additional medical appointments in March, one of which required her to miss an additional two days of work. During a visit on March 28, the doctor stated that she could return to work the next day with no limitations and was excused from work on March 27 and 28. (Doc. 67-13.)

Also on March 28, Ali emailed Young and HR, requesting that Young work with HR to get approval for her medical leave. (Doc. 59-11.) Young emailed HR the same day:

**From:** Annette Young <Annette.Young@affordablecare.com>
**Date:** March 28, 2023 at 3:40:35 AM HST
**To:** Deena Ali <Deena.Ali@affordablecare.com>, HR Benefits <HRBenefits@affordablecare.com>
**Subject: Re: Next week**

Good morning,

I am trying to see what I need to do regarding my medical stuff I have going on. My doctor wrote me off for yesterday and today returning to work tomorrow due to medication she started me on that has made me sick. I will have a endoscopy in office e done the week I am home base and can return to work as scheduled after my home week.
Can someone please get in touch with me and advise as to my options.

Annette Young
Field Trainer Specialist
239-292-5299
Annette.Young@affordablecare.com

(Doc. 59-11 at 2.) HR's response was directed to Ali and Lovell and did not copy

Young. It was HR's impression that Young did not need to take leave because

she wasn't going to miss enough days:

| | |
|---|---|
| **From:** | HR Benefits <HRBenefits@affordablecare.com> |
| **Sent:** | Tuesday, March 28, 2023 3:06 PM |
| **To:** | Deena Ali; HR Benefits |
| **Cc:** | Laura Lovell |
| **Subject:** | RE: Next week |
| **Attachments:** | LOA Request Form 2023.pdf |

Good afternoon,

I hope all is well. It looks like her doctor's note has her listed to return on 3/29 with no restrictions. We would go by what the doctor's note says on when she can return. A leave is only needed when an employee will be out for more than 4 days. Since she has only missed Monday and today, she would not need to be placed out at this time and could just use sick time for the days that she missed.

I am also including the leave of absence request form in case any additional time is needed for a continuous or intermittent leave (such as recurring doctor appointments). We would then review and send out any other additional needed information.

Sincerely,
HR Benefits Team
AFFORDABLE CARE
RH

(Doc. 59-12.)

Also on March 28, Ali emailed Donnell and Pelton to express concern with Young's reliability because of her medical issues:

**From:** Deena Ali <Deena.Ali@affordablecare.com>
**Sent:** Tuesday, March 28, 2023 8:29:50 AM
**To:** Bobby Donnell <Bobby.Donnell@affordablecare.com>; Garrett Pelton <Garrett.Pelton@affordablecare.com>
**Subject:** Annette Young

Hello Bobby and Garrett:

Annette is dealing with some medical concerns so I've asked her to go through HR for medical leave. This was advised to me by Laura Lovell. I can not continue to have her be unreliable like she is, and since she is using medical concerns as her reasoning this is the course of action I need to take. I wanted to let you both know. Thank you.

Deena Ali
(773)606-6111

(Doc. 59-14.) Three days later, Young was terminated. Unsurprisingly, Young relies on this letter to argue that Affordable Care terminated her due to her medical issues.

The day Young was terminated, HR realized they had not copied her on the earlier email from the 28th, and responded:

**From:** HR Benefits
**Sent:** Friday, March 31, 2023 4:58:43 PM
**To:** Annette Young
**Cc:** HR Benefits
**Subject:** Leave Information
Good afternoon,
I hope all is well. I apologize for the delay. We had previously sent this over to Deena but realized you were not CC'ed on that email. I have attached the leave of absence request form for you here. A leave is not typically needed if an employee is out for less than 4 days. However, if additional time is needed for doctor's visits or other medical reasons, you may want to complete and return the attached form to start the intermittent leave process.
Please let us know if you have any questions.
Sincerely,
HR Benefits Team
**AFFORDABLE CARE**
RH

(Doc. 59-13.)

## II. Legal Standard

Summary judgment is not a substitute for trial. It is appropriate only "when a movant shows that there is no genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law." *Gonzalez v. Indep. Ord. of Foresters*, No. 24-10758, 2025 WL 337898, at *2 (11th Cir. Jan. 30, 2025). "When deciding a motion for summary judgment, a judge is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-41-KCD, 2023 WL 8978168, at *1 (M.D. Fla. Dec. 28, 2023). "An issue is genuine if a reasonable jury could return a verdict for the nonmoving party." *Do v. Geico Gen. Ins. Co.*, No. 1:17-CV-23041-JLK, 2019 WL 331295, at *2 (S.D. Fla. Jan. 25, 2019).

"The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial." *Andrews v. Ciccone*, No. 3:23-CV-88-MMH-SJH, 2025 WL 2508878, at *2 (M.D. Fla. Sept. 2, 2025). "[A] fact is material if it may affect the outcome of the case under the applicable substantive law." *Toca v. Debonair Props. LLC*, No. 2:23-CV-303-KCD, 2025 WL 2106674 (M.D. Fla. July 28, 2025).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions,

answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). This requires the nonmovant to "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports [its] claim." *Alexander as trustee of Franklin Pharmacy, LLC v. Aaron*, No. 3:15-CV-1314-AKK, 2017 WL 11437294, at *1 (N.D. Ala. June 1, 2017); *see also Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 177 (5th Cir. 2016).

### III. Discussion

"The FMLA grants an eligible employee the right to take up to 12 workweeks of unpaid leave annually for any one or more of several reasons, including [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). To protect this right, the FMLA allows employees to bring a private cause of action for interference or retaliation. *Id.* Young has pled both claims here, so the Court considers each in turn.

### A. FMLA Interference (Count I)

An employee establishes an FMLA interference claim when she "demonstrate[s] by a preponderance of the evidence that she was entitled to an FMLA benefit that was denied." *Batson v. Salvation Army*, 897 F.3d 1320, 1331

(11th Cir. 2018); *see also Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1266-67 (11th Cir. 2008). Young alleges that Ali and Lovell interfered with her FMLA rights by firing her after she requested leave. (Doc. 59 at 10-11 ("Differently put, Defendant terminated Plaintiff's employment knowing she was eligible for FMLA leave, and that her prior and future absences would have/would be FMLA-protected."))

"An interference claim has two elements: (1) the employee was entitled to a benefit under the FMLA; and (2) her employer denied her that benefit." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). "The first element ... subsumes several sub-elements," including "(1) that the defendant is a covered entity; (2) that the plaintiff is eligible for FMLA benefits; (3) that the plaintiff sought leave for a qualifying reason; and (4) that the plaintiff provided notice meeting certain criteria." *Moore v. GPS Hosp. Partners IV, LLC*, 383 F. Supp. 3d 1293, 1297, n.1 (S.D. Ala. 2019).

An employer's motives for denying an FMLA benefit to which the employee is entitled are usually irrelevant. *See Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001). Even so, an employer is not liable "if [it] can show that it [acted] for a reason wholly unrelated to the FMLA leave." *Id.* If a plaintiff establishes a prima facie case, the question at summary judgment becomes "whether the evidence, viewed in the light most favorable to the non-moving party, establishes as a matter of

law that the employer would have terminated the employee regardless of her request for or use of FMLA leave." *Batson*, 897 F.3d at 1331-32. So the plaintiff must ultimately show that the request for FMLA leave was the proximate cause of her termination. *See Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1242 (11th Cir. 2010) (explaining that, for an employer to be held liable for FMLA interference, the request for leave must have been the proximate cause of the termination).

### 1. FMLA Qualifying Condition

Here, Young alleges that she was denied the right to take FMLA leave. An employee is qualified to take FMLA leave if she suffers from a "serious health condition" that makes her "unable to perform the functions of [her] position." *Hurley v. Kent of Naples, Inc.*, 746 F.3d 1161, 1166 (11th Cir. 2014). As defined in the FMLA, "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). To qualify as "continuing treatment," it (1) must involve a period of incapacity of more than three consecutive, full calendar days, and (2) must require either (a) treatment by a healthcare provider at least twice within 30 days of the first day of incapacity or (b) treatment by a healthcare provider at least once that results in a regimen of continuing treatment under the supervision of the healthcare

provider. *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1242 (11th Cir. 2021); *see* 29 C.F.R. § 825.115(a)(1)-(2). "The term incapacity means inability to work ... or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

Though disputed by the parties, the Court finds that Young's condition satisfies all these definitions. Her doctor advised her on February 10 to rest her voice and use it as little as possible. (Doc. 78 at 4.) Young conveyed to Ali that her doctor was concerned that her swollen vocal cords had lesions. (Doc. 59-2 at 161.) Based on the record, the Court can suppose that Young's job as an FTS involved working in person and talking extensively to practice staff and personnel. (Doc. 60 ¶ 7.) Orders from her doctor to talk as little as possible for a week made her unable to perform her work activities. *See* 29 C.F.R. § 825.113(b). And Young was excused from work for the week. (Doc. 59-7.) That's more than three consecutive, full days, so it meets the first half of the "continuing treatment" standard. 29 C.F.R. § 825.115(a)(1)-(a)(2).

Young also states that she had follow-up appointments on February 13, 17, and 28 for her voice issues, which Affordable Care does not dispute. That satisfies the second qualifying condition for "continuing treatment," since her treaters prescribed a continuing regimen of treatment. *See* 29 C.F.R. § 825.115(a)(2). Young, therefore, had a qualifying "serious health condition." 29

U.S.C. § 2611(11)(B). And that condition rendered her unable to perform the essential functions of her job. *Id.* § 2612(a)(1)(D).

## 2. Denial of an FMLA Benefit

To succeed under her interference theory, Young must demonstrate that she was "denied a benefit to which [s]he was entitled under the FMLA." *Martin*, 543 F.3d at 1266-67. According to Young, she successfully made this showing by proving that she was fired after requesting FMLA leave (Doc. 52 at ¶ 39), thereby demonstrating that Affordable Care denied her the benefit of the leave to which she was entitled. Affordable Care, on the other hand, contends that it fired Young for independent performance-related reasons, and thus it did not violate the FMLA.

Affordable Care is entitled to summary judgment if it acted for a reason "wholly unrelated" to her request for FMLA leave. *Strickland*, 239 F.3d at 1208. An employer does not violate the FMLA by firing an employee who is eligible for FMLA leave. After all, "the right to commence FMLA leave is not absolute." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010). Instead, "if a dismissal would have occurred regardless of the request for FMLA leave, an employee may be dismissed," even if it "prevent[s her] from exercising [her] right to leave or reinstatement." *Id.* Accordingly, the mere fact that Young was eligible for FMLA leave is not determinative. *See Montgomery v. Ion Media Mgmt. Co.*, No. 8:10-cv-429-T-33AEP, 2011 WL 1791294, at *11

14

(M.D. Fla. May 10, 2011) (explaining that an employee is not "insulated from termination" just become he has raised "the possibility of her need for FMLA leave" or even by "formally request[ing] such leave"); *see also Gamba v. City of Sunrise*, 157 F. App'x 112, 113 (11th Cir. 2005).

Unlike retaliation claims, there is no burden shifting or formal pretext analysis. *See Herren v. La Petite Acad., Inc.*, 820 F. App'x 900, 906 (11th Cir. 2020) (distinguishing between FMLA retaliation and interference claims). Instead, Affordable Care bears the burden of establishing a lack of causal connection. *Id.* Accordingly, the question is "whether the evidence, viewed in the light most favorable to the non-moving party, establishes as a matter of law that the employer would have terminated the employee regardless of her request for or use of FMLA leave." *Batson*, 897 F.3d at 1331-32.

Affordable Care argues that it disciplined and fired Young for independent reasons. That is, for her repeated failures to obtain approval to change her schedule after they counseled her on company expectations, and ultimately, for her unilateral decision to close the LaGrange office early. (Doc. 67 at 18-20.) Although Affordable Care provided evidence of these issues, Young has presented facts to the contrary. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (noting that the non-movant cannot rest on "mere allegations" of disputes, "but must set forth by affidavit or other evidence specific facts" showing there is a dispute for trial).

Young's declaration states that she was "never issued any disciplinary action, performance improvement plan, or other performance related deficiency document," and "did not have any counseling sessions" with anyone at the company. (Doc. 66-1 ¶¶ 5, 7.) But three days before she was terminated, Ali stated that Young was unreliable due to her medical issues. (Doc. 59-14.) And five days after she was terminated, Tiama Smith, Lead FTS for Affordable Care, sent Young a professional recommendation letter, stating that she witnessed Young's "exceptional skills." (Doc. 59-4.) Given these competing facts, the Court cannot say that Young's termination was for a reason wholly separate from her medical issues and request for medical leave. Because the facts regarding her termination are in sharp dispute, summary judgment is improper for either party on the FMLA interference claim.

## B. FMLA Retaliation (Count II)

A claim for FMLA retaliation is generally evaluated under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff must establish a prima facie case for retaliation. If the plaintiff does so, the burden shifts to the employer to provide a legitimate reason for the termination. If the employer provides such a reason, the burden shifts back to the employee to show that the asserted rationale is pretextual. *See Martin*, 543 F.3d at 1268.

16

### 1. Prima Facie Case of Retaliation

To state a claim for retaliation under the FLMA, "an employee must allege that (1) [she] engaged in a statutorily protected activity; (2) [she] suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1252 (11th Cir. 2004). Unlike an interference claim, a retaliation claim places an "increased burden" on a plaintiff to show "that [her] employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Strickland*, 239 F.3d at 1207. A plaintiff's ultimate burden is to "demonstrate that [her] employer intentionally discriminated against [her]." *Id.*

Young engaged in statutorily protected conduct when she requested leave. She also suffered an adverse employment action when Affordable Care terminated her. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided under the FMLA. 29 U.S.C. § 2615(a)(1). The dispute here boils down to whether Young "came forth with sufficient evidence to create a genuine issue of fact that [her] application for FMLA leave caused [her termination]." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 798 (11th Cir. 2000).

17

To establish causation, "a plaintiff need only show that the protected
activity and the adverse action were not wholly unrelated." *Clover v. Total Sys.
Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999). Usually, "close temporal
proximity between the employee's protected conduct and the adverse
employment action is sufficient circumstantial evidence to create a genuine
issue of material fact." *Brungart*, 231 F.3d at 799. But "temporal proximity,
without more, must be very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d
1361, 1364 (11th Cir. 2007). And temporal proximity alone "is not sufficient to
establish a causal connection when there is unrebutted evidence that the
decision maker was not aware of the protected activity." *Krutzig*, 602 F.3d at
1235.

On these issues, there is a dispute of material fact. Ali said that Young
had become unreliable because of her medical issues. (Doc. 59-14.) And that
same day, Young emailed HR, requesting that someone contact her to discuss
her options regarding medical leave. (Doc. 59-11 at 2.) Young was terminated
three days later. Although proximity alone is insufficient to show causation
when "an employer contemplates a given action" before the exercise of FMLA
rights, *see Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227,
1232 (11th Cir. 2006), there's no evidence that Affordable Care had discussed
terminating or disciplining Young before she contacted HR about medical
leave. To be sure, performance issues were discussed, but no one mentioned

termination or taking disciplinary action against her for her purported
failures. Young's medical issues began on February 10, but Ali only began
mentioning medical issues as a concern on March 28, the day Young requested
information about taking leave from HR. (Doc. 59-14.) Accordingly, Young's
evidence of temporal proximity suffices to show causation.

### 2. Nonretaliatory Reasons for Termination and Pretext

Even though Young has made out a prima facie case, Affordable Care
can avoid this claim by providing a legitimate, non-discriminatory reason for
its actions. *See Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1335 (11th Cir.
2000). As mentioned, Affordable Care cites Young's purported performance
issues. But Young offers evidence to "show that the employer's proffered reason
was pretextual." *Martin*, 543 F.3d at 1268. Evidence of pretext should
demonstrate "such weaknesses, implausibilities, inconsistencies,
incoherencies, or contradictions" in the proffered reasons "that a reasonable
factfinder could find them unworthy of credence." *Combs v. Plantation
Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). Ultimately, to "avoid summary
judgment," a plaintiff "must introduce significantly probative evidence" of
pretext. *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993).

According to Affordable Care, it fired Young because: "Employee has
multiple instances of not showing up for assignments or trying to get out of
assignments. She has become unreliable. Today she took it upon herself to

close a practice early so she could leave early. This is not her decision to make." (Doc. 60-12.) To show pretext, Young "must meet that reason head on and rebut it." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (reasoning that an employee cannot "succeed by simply quarreling with the wisdom of that reason").

The evidence is in dispute over how and why the LaGrange practice was closed early on March 31. There's also a dispute of material fact over Young's performance issues. Lovell testified that Young "was underperforming ... or had [] issues with following expectations of her management, and her manager [Ali] and I gave her many counseling sessions and communications regarding not following expectations." *See* Doc. 59-3 at 14. But Young disputes that these counseling sessions took place. (Doc. 66 ¶ 14; Doc. 66-1 ¶ 7.) According to Lovell, Young was making unilateral decisions about her travel without consulting her manager and failed to show up for work as scheduled. (*Id.* at 16-17, 36.) Ali testified similarly. (Doc. 59-2.) But Young says she was never informed there were any issues with her performance. (Doc. 66 ¶¶ 5, 22.) And Affordable Care took no action until Young began asking about medical leave.

At bottom, Young has presented sufficient evidence to create a genuine dispute of material fact as to whether Affordable Care's reasons for terminating her were inconsistent and therefore pretextual, sufficient to take the issue to a jury. *See Jones v. Gulf Coast Health Care of Delaware, LLC*, 854

F.3d 1261, 1275-76 (11th Cir. 2017). When viewed in the light most favorable to Young, it is debatable whether Affordable Care's reasons for terminating her were pretextual. So Affordable Care is not entitled to summary judgment on the retaliation claim.

### C. Disability Discrimination

In Counts III and V, Young claims Affordable Care violated the Americans with Disabilities Act ("ADA") and the Florida Civil Rights Act ("FCRA"). (Doc. 25 at 10, 12.) Courts analyze disability discrimination claims the same way under both laws. *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000). To prevail on these claims, Young must show: "(1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).

As to the first element, "the term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1225 (11th Cir. 2005) (citing 42 U.S.C. § 12102(2)). The ADA directs courts to construe "disability" in "favor of broad coverage of individuals" to the "maximum extent permitted by the terms" of the statute. 42 U.S.C. § 12102(4). Accordingly, courts have noted that the bar

to be considered "disabled" under the ADA is not a high one. *See, e.g.*, *Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1268 & n.2 (11th Cir. 2014).

For an employee alleging that an employer "regarded" her as impaired, she need not prove that the impairment—in actuality or in perception—limits a major life activity. *See* 42 U.S.C. § 12102(3)(A). That said, it does not "apply to impairments that are transitory and minor," defining a "transitory impairment" to mean one with an "actual or expected duration of 6 months or less." *Id.* § 12102(3)(B). Thus, "an employee has a 'disability' under the ADA when that employee actually has, or is perceived as having, an impairment that is not transitory and minor." *EEOC v. STME, LLC*, 938 F.3d 1305, 1315 (11th Cir. 2019).

Young alleges that there is sufficient evidence from which a jury could find she had a record of disability, or was perceived as disabled. (Doc. 66 at 21.) She cites her medical records in support (*Id.*; Doc. 78.) Affordable Care argues that Young makes only conclusory allegations that she is disabled as defined by the ADA, unsupported by facts. (Doc. 60 at 22.) The Court agrees with Affordable Care.

It is unclear what physical impairment Young suffers from that substantially limits one or more major life activities. Her amended complaint cites a laundry list of activities, "including but not limited to sleeping, eating, walking, working, and sitting." (Doc. 25 n.2.) And the pleading states that her

medical conditions affect her immune and lymphatic systems. (*Id.*) But those conditions aren't discussed to any extent in the medical records. Instead, the records focus on laryngitis or voice loss. But Young doesn't explicitly say that this is the medical condition limiting her major life activities. The Court is instead left to guess.

The Court could assume that Young's disability is speaking due to voice loss and other issues with her voice box, but she provides no medical records that support the assertion she is prohibited from speaking beyond a transitory period. "It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002). At bottom, the Court simply won't do this work for Young. *See Herman v. Mr. Cooper Grp. Inc.*, No. 2:23-CV-948-JES-KCD, 2024 WL 3277021, at *1 (M.D. Fla. July 2, 2024) ("In our adversarial system, a claimant must present her case. It is not a court's job to conduct research to provide the proper support for [conclusory] arguments."); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed[.]"). At summary judgment, "the onus is upon the parties to formulate arguments." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

Young also argues that a jury could find that Affordable Care perceived her as disabled, but this argument fails for the same reason. (Doc. 66 at 21.) Under the "regarded as" prong, a person is "disabled" if her employer perceives her as having an ADA-qualifying disability, even if there is no factual basis for that perception. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th Cir. 2002). As with actual impairments, however, the perceived impairment must be one that, if real, would limit substantially a major life activity of the individual. 42 U.S.C. § 12102(2)(C); *see also Sutton v. Lader*, 185 F.3d 1203, 1208 (11th Cir. 1999). Again, Young provides no evidence to show that a medical condition affects a function that qualifies as a major life activity. Young failed to show that Affordable Care perceived her limitations in performing her job as having a permanent or long-term impact and as preventing or severely restricting her from performing activities of central importance to most people's lives. At bottom, Young offers no evidence that she cannot perform major life activities. Thus, Affordable Care is entitled to summary judgment on Counts III and V.

## D. Retaliation

Finally, in Counts IV and VI, Young alleges that Affordable Care retaliated against her under the ADA and FCRA after she requested accommodation in the form of a modified work schedule to attend doctor appointments. (Doc. 25 at 14; Doc. 66 at 22.) These claims fail for the same

reason as above. The ADA requires that employers reasonably accommodate qualified individuals with disabilities. *See* 42 U.S.C. § 12111(9)(B) (discussing accommodations that must be offered "for *individuals with disabilities*") (emphasis added). Young has not shown that she has a qualified disability under the ADA. Thus, Affordable Care is entitled to summary judgment on Counts IV and VI as well.

## IV. Conclusion

1. Annette Young's Motion for Partial Summary Judgment (Doc. 59) is **DENIED**.

2. Affordable Care, LLC's Motion for Summary Judgment (Doc. 60) is **GRANTED IN PART AND DENIED IN PART**.

    a. Summary judgment as to Counts I and II (FMLA interference and retaliation) is denied.

    b. Summary judgment as to Counts III, IV, V, and VI (ADA and FCRA discrimination and retaliation) is granted.

**ORDERED** in Fort Myers, Florida on December 31, 2025.

Kyle C. Dudek
United States District Judge